Good afternoon all. We will be hearing the first two cases, Whitmore v. Superintendent and Salvatore v. XTO, and we'll then recess and resume with Bob Brown v. Civiello et al. So we will start with Whitmore v. Superintendent 22-2237. Good morning, Your Honor. My name is Rosemary Aldi from the Federal Community Defender's Office, and I represent Petitioner Keith Whitmore in this case. With the court's permission, I would request three minutes for a rebuttal. Granted. Thank you. Your Honors, just as in Branch v. Sweeney, the appeal in this case is narrow. Mr. Whitmore is simply asking for a remand so that he can have the hearing he's requested in both state and federal court. Whitmore has alleged facts that, if proven, would demonstrate that he is entitled to federal habeas relief for trial counsel's failure in conducting any investigation and presenting any evidence related to Dennis Johnson, a critical police witness, in this case. You know, it's interesting that you say failure to conduct any investigation, because that's not really the nuance of any of the arguments that were raised before. And your client, in his statement, says that he told his counsel and his counsel told him that he had someone looking into it. So isn't really what your argument is, is more in the failure to impeach or the failure to present evidence? Yes, Your Honor, we raised both arguments. But the statement that Mr. Whitmore had in his affidavit was merely that his attorney said he was looking into it. But that doesn't demonstrate that he actually was looking into it. And as far as the record has any evidence on whether or not Mr. Whitmore or trial counsel was actually doing any investigation, the record reflects that no investigation investigation had taken place because trial counsel didn't even know that this witness, Mr. Johnson, whether or not he had even previously arrested. Let me just push back one point. You said that you're raising both arguments, failure to investigate and failure to impeach. But the certificate of appeal ability was only granted for failure to impeach, not failure to investigate. It says, as to his claim that counsel rendered ineffective assistance by failing to impeach officer Dennis Johnson regarding his personal bias towards appellant. In the district court, Mr. Whitmore did raise it as a failure to investigate and failure to impeach. But if but nonetheless, the jurisdiction depends on the scope of the COA now and the failure to impeach is enough to grant habeas relief in this case, because because as we've demonstrated, that failure resulted in this evidence being unchallenged in the state court, the firearm evidence being entirely unchallenged. And the significance of Mr. Whitmore or the of the bias in this case demonstrated that that Johnson's testimony was so critical in this case because he was the only witness to place Whitmore near the firearm. And, you know, let me let me ask you about the firearm since you brought that up. The ballistics expert who testified for the Commonwealth said that his comparison of the bullet jacket and the weapon, the the Colt weapon was inconclusive. Yes, Your Honor. OK, so they went through all of this and there was the lengthy testimony, somewhat lengthy testimony on ballistics. And it didn't show anything. OK, so what difference does it make? What difference does Johnson's testimony really make? I mean, if you could impeach Johnson to show maybe he had an axe to grind for Whitmore, the jury heard testimony it didn't connect the weapon to Whitmore. Well, Your Honor, that's not true. The jury heard testimony. Mr. Johnson testified that Whitmore was standing near the gun. And and so what he said he was standing. He was standing near a gun. It was either five to 10 feet or five to 10 yards, which is a difference. But he was he was near a gun. But if you can't connect the gun to the killing for which he was convicted, what difference does it make? But the Commonwealth did connect the gun to the killing. While we understand these facts to be that the that the class characteristics of the firearm were such that this wasn't really in any way connected to the to the murder. How did they connect it otherwise? During the examination, the the trial court actually took over the examination of the expert. And he started asking the expert because he got very frustrated that it was very confusing. And in that examination, he actually analogized these class characteristics, which are common to every gun of that manufacturer. He analogized it to a fingerprint evidence and said that this gun, this evidence was as though it was fingerprint evidence. And by the time of closing argument, the Commonwealth was arguing the prosecutor was arguing that this was scientifically proven to be the murder weapon. And trial counsel did what? That this was scientifically proven to be the murder weapon. That was the argument at the prosecutor's argument. And trial counsel did nothing to to to contradict that or to draw out that, in fact, this wasn't the murder weapon. And in no way would have been actually connected to the murder. And in addition, even though Johnson only testified, even though this weapon may have been a red herring, your argument is that counsel didn't do anything to attempt to impeach Johnson, who was the key to tying the weapon in to Whitmore. And even though the weapon was red herring, that's not how the jury understood it. And we knew that because the jury, the only two jury questions were related to the firearm. They understood how critical this firearm was. And Detective Bamberski told them, the lead detective in this case, told them how critical this weapon was. Detective Bamberski says we had these statements from the juveniles, but we weren't really ready to issue an arrest warrant. And we weren't ready to issue the arrest warrant until Mr. Whitmore was found with this firearm. And again, even though we're parsing apart the records for these facts, it's important to understand the perception that was given to the jury. By the end of trial, everybody was talking about Whitmore possessing this gun. And in fact, the jury instruction that the court gave was that you might have heard evidence that Mr. Whitmore possessed the gun, but you can't use that against him in this, you know, the 404B instruction. But in that instruction, he actually talked about Mr. Whitmore possessing the gun. Even his trial attorney said that Mr. Whitmore was picked up with the gun. He did at one point correct himself. Well, I'm not saying he had the gun. But he actually, by the end, everybody was talking about Mr. Whitmore being with this gun. And this gun was, according to the Commonwealth, the murder weapon. We know it scientifically to be true. Does that really depend only on Johnson's testimony, though? Because we have Hopkins retrieving it and Bomberski saying that Whitmore was arrested at the scene. If we put those two pieces of testimony together, even without Johnson tying him to it with proximity, whether it's yards or feet, why isn't that enough? Your Honor, first of all, neither Bomberski. Bomberski wasn't on the scene at all, so he would only be testifying to information he received from officers at the scene. But it came in as supposedly state-of-mind evidence. Without an objection, we're limiting instruction, right? Yes, it did come in as state-of-mind evidence. But, again, if trial counsel had examined Johnson about this bias, he would have been able to tease out for the jury. We don't even know if he actually had this gun, because the only person who said he had this gun is this biased witness. And had they teased that out for the jury, too, he would have been able to draw the picture of what actually happened on the scene, that they had descended on this melee with dozens of people, one officer actually describing it as 100 people, running around, where, yes, ultimately Lucas and Whitmore were detained. But who knows who put that gun in that bush? Who knows that that gun was even put in that bush that night? This was, as you recall, just three blocks away from where the homicide was. I mean, it's very possible the gun was put into that bush the night of that homicide and had nothing and was only discovered because officers had descended on the scene at the time. But, again, that's all – if counsel had pulled out – teased out this bias, they would have been able to draw – to pull the jury into this narrative. Can I just ask – you know, this failure to impeach, as I'm just thinking about it, I think there's probably two ways you could go about impeaching. Counsel could have gone about impeaching. First would be to cross-examine Johnson. And second would be to get your own witness that would have something to do, maybe somebody from the Chinese restaurant or maybe his niece or someone like this could do that. But you want to put this in. And I'm just trying to figure out how this would make a difference because Mr. Alva was really concerned about not opening the door. And he made that very clear at trial that he didn't want to do certain things to open the door. And so if you begin to cross-examine Johnson on don't you have a bias against Whitmore, don't you open the door on redirect for basic questions like why were you biased? Or, you know, why did you hold that opinion of him? And then a parade of horribles could come in. So I'm not seeing how cross-examination definitively moves the dial in terms of either prejudice or litigation judgment. I think a judge might be – a defense counsel might be able to say, look, I could try to impeach, but that's a really big door I'm opening either through cross-examination or direct. So when we assess strategy and we assess prejudice, don't we also have to look at the size of the door that would have happened and how this world would have looked had that impeachment happened? Your Honor, that big door that you're talking about is purely based on speculation. There's nothing in the record to indicate that there would have been this big door that would have been open. All we have is this sidebar comment from the DA that Johnson maybe had previously arrested, or I think she stated affirmatively that Johnson had previously arrested Whitmore. But we don't know the circumstances of that alleged arrest. We don't know when it occurred. We don't know what it was for other than she suggested narcotics. So just walk me through with that cross-examination. You say that any competent counsel should have done this cross-examination of Johnson. How does that first or second question go? Does it lead with you're biased against my client? Is that how it goes? Walk me through what Mr. Alva should have done since it should be obvious to any competent counsel what he did. Otherwise, it's not ineffective. Your Honor, first of all, he could have impeached Mr. Johnson at the beginning about the discrepancy in his prior statement and his testimony at trial. All of his prior statements said that the gun he recovered was black with wood grips and the gun at the time of trial. That's clearly different than what the COA. No, I understand. What I'm saying is trial counsel could have started with that. On point, on point. This is the question that any competent counsel should have had front and center in their mind that they should ask. And so what is that question or questions that should have happened? Well, truthfully, Your Honor, I haven't thought out exactly what those questions are. But what I think a competent attorney in order. But what I think a competent attorney could have done was draw out that Mr. Johnson has had a history of using his police power to abuse and intimidate or to intimidate Mr. Whitmore and would would be able to draw out that he had sitting in a car. He had intimidated or threatened Mr. Whitmore for dating his niece that he had sitting in a police car in his. Don't you run the risk if you just hold on? You just ask that simple question. Weren't you upset with Mr. Johnson because he was dating your niece and you didn't want him dating your niece? The one logical response that Johnson might give to that question is, no, I'm not upset with him about that. I'm upset with him because he's a he's a drug dealer who I arrested and I don't want a drug dealer dating my niece. What do you do with that? You can have a you know, you can have an instruction from the from the court. But the jury's already heard that. But regardless of what the reason why he he was prejudiced or biased against Whitmore doesn't change the bias itself. And it's not like there wasn't evidence at trial that that from other witnesses that Mr. Whitmore had dealt drugs in that neighborhood. And that was also went uncontested. So the cumulative evidence of that Mr. Whitmore might have dealt drugs in that neighborhood against evidence that this police officer has engaged in any campaign of harassment of this witness of this of Mr. Whitmore to the point that he's using his police power and conducting illegal searches, which he calls to which he himself has described as personal searches against the possibility that it might come out that he was. How do you get that out? What question do you ask Johnson so that you could safely say that he would admit that? Well, Your Honor, he was not the only witness to the to this bias. Salida Laughlin was also a witness to the bias. But what does it get you to show that bias? And what is the actual theory of the defense? Is it that he's he planted the gun that he was lying about where it was found? Your Honor, he because Mr. Johnson was the only witness to place with Mr. Whitmore near this gun that the Commonwealth, the Commonwealth relied on him for constructive possession of this firearm. And so if you're able to convince the jury that Mr. Johnson is biased and that you can't trust what he's saying about Mr. Whitmore, at that point, the Commonwealth doesn't have any constructive possession of the firearm. At that point, the defense can strenuously argue, you know, we don't even know that this guy was picked up with this gun. And Detective Bramberski has told us that the children's statements themselves are not convincing. So you don't have the firearm anymore because we don't know if in this melee that Mr. Whitmore was the one who actually placed what is what they're arguing is this murder weapon into that bush. It could have been anybody in that way. It could have been anybody who actually committed the homicide the six weeks before that was only three blocks away. And being able to discredit Johnson allows the Commonwealth or allows the defense to raise serious arguments about the constructive possession of the firearm. And for a juror, it might have convinced them that that was not enough information, that just the children's testimony is not sufficient or is not enough to convict Mr. Whitmore. But when we've had eyewitness cases, even with eyewitnesses alone, at least for purposes of reviewing sufficiency of the evidence, we have various cases where we've said that that's enough. And why wouldn't we, when we're considering whether there was prejudice here, look at the evidence and say where you've got two eyewitnesses, one of them making the contemporaneous report and that witness also testifying that there's enough on this record regardless of Johnson's testimony to deny relief? Because the test here is not sufficiency. What we have to do or what you have to do when you determine prejudice is determine how the evidence was affected by trial, how the overall trial was affected by trial counsel's deficiency here. And so when we talk about how critical this firearm evidence was, we have to think about how that would have affected if trial counsel had been able to discredit Johnson and therefore discredit the idea that Whitmore had this gun or was the one who possessed this gun and the way the jury relied on that in addition to the children's testimony. Let me ask you a question. What are you asking for here? What do you want us to do? We're simply, and I know we've been spending a lot of time on prejudice, but we're not even asking for habeas relief in this case. We're simply asking for a remand. And Judge Pipps, I appreciate your questions. But ultimately, we are requesting that this go back to the to the district court so that we can get a full and complete record so that we can actually play out the scenarios that you're talking about. Are you arguing that any time a petitioner walks into our court with an uncooperated, self-serving affidavit and they haven't had a hearing in the state court, that we have to require the district court to hold an evidentiary hearing? I think, Your Honor, yes. So I think that's two questions. So with regard to the state court, they just dismiss the affidavit as self-serving. But in a situation like this, where you have a right that's being addressed, and the only evidence is a conversation between the petitioner and his attorney, if we're just going to kick out the affidavit because it's self-serving, all affidavits presented by courts are self-serving. Uncooperated. Self-serving and uncooperated. Except that it was corroborated with his affidavit. What happened was the state court just- No, no. It's the affidavit. The only thing you have is the affidavit. Yes, but what we're talking about is a confidential conversation between a client and his attorney. What other evidence could he have? If we're going to accept the way that the state court dismissed this case, then what we're doing is- You're not answering my question. I'm saying under those circumstances, are we then required to direct all district courts to hold evidentiary hearings under habeas? If the affidavit itself is not contested by the record, then yes, the court is required to have a hearing. It sounds like you're assuming the step of doing the Strickland analysis. I'm sorry, Your Honor. In what way? Well, if I'm understanding you correctly, you're saying if there's an affidavit that, albeit self-serving and uncorroborated, but it is enough to raise the questions about deficient performance and prejudice, that under those circumstances, that's when- Your Honor, I'm sorry. I did presume that in the question. Yes. If the affidavit presents a prime inpatient case and there's nothing that contradicts that affidavit, then yes, a hearing is required. Or alternatively, the state court has to assume the facts to be true and as a matter of a law dismissal. I get how you say that because I've read the case law, but there's another part of our case law that says our appellate review is under abuse of discretion. And so that means there has to be some discretionary decision made by the district court as to whether a hearing would be needed. And the formula that you've outlined, it's really a formula. There's no exercise of discretion. It's yes, no, yes, no, and then if it breaks a certain way, hearing is mandated. How do we square that formulaic understanding of the hearing requirement with the fact that our standard of review is abuse of discretion? Well, here, Your Honor, as the court directives to branch and as folks and as Marshall demonstrates, it is abuse of the discretion when the district court, as it did here, creates speculation and conjecture about what counsel's strategies were that are not founded in the record at all. For example, the district court said that cross-examining Johnson about this bias would have opened the door to all of these bad facts, but we don't even know what those bad facts are because trial counsel didn't do the investigation and the district court and the state court denied a hearing. So we don't even, everything that the district court referenced with regard to what would have been counsel's strategy is entirely based on speculation and it's based on speculation that's not founded in the record. That goes back to the question of failure to investigate, and you had indicated earlier that failure to investigate and failure to impeach had been addressed as separate arguments. Is the failure to impeach tied up with the failure to investigate? Are they separate? How should we think about those things? I think that they are tied up together, Your Honor, and that's how in the district court this was raised. It was always raised as a failure to investigate and impeach. And because you can't, I think it's because you can't impeach a witness unless you've investigated what potential pitfalls you are opening yourself up to and what potential positive information you might get from the investigation. That said, though, just as in Branch, we have enough here for a remand just on the failure to impeach because even assuming all these facts is true with regard to investigations, say counsel did the investigation, even though there's no evidence in the record that he did, and in fact evidence in the record he did not do an investigation, but say we're assuming in the respondents' favor that counsel did do this investigation. No reasonable counsel would then take this bias and throw it on the cutting room floor rather than use the bias to impeach this very critical witness, the only witness who could place this gun in Whitmore's hand. And I say that deliberately because, again, even though we all know in parsing the record that he only placed Whitmore 10 to 40 feet away, by the end of the trial, this gun was in Whitmore's hand or at least in his possession. That's how everybody was describing it, even his defense counsel. So had counsel done that investigation, he would have been able to impeach the witness on those things. We'll hear from you on rebuttal. Thank you, Your Honor. Mr. Andrews. Good afternoon. May it please the court. Peter Andrews from the Philadelphia District Attorney's Office on behalf of the Commonwealth. The district court did not abuse its discretion here in denying Mr. Whitmore's ineffective assistance claim without an evidentiary hearing. And I think we see that most clearly when we walk through the prejudice analysis, which is what some of, I think, Judge Fischer's questions were getting at. The case against Mr. Whitmore really did not turn on the gun. It turned on the reliable testimony of specifically the witness, NP. NP gave a reliable, consistent story in which he identified Mr. Whitmore as the shooter. This wasn't a stranger identification of Mr. Whitmore. He knew Mr. Whitmore from the neighborhood. He knew his nickname. Mr. Whitmore had been in his house. He saw Mr. Whitmore commit the shooting that evening, and he contemporaneously reported it that evening to both the neighbor who he ran to after the shooting and to his mother the next day. He gave a consistent statement to the police when he gave a statement to them, and then he told that same story at trial. And that's also corroborated somewhat by the other witness, the juvenile witness who identified Mr. Whitmore as the shooter to police. At trial, he went south a little bit and said, well, it looked like him. He didn't recant his earlier statement. Those pieces of testimony were the core of the case, and we can see that when we look at the closing arguments. The closing arguments were about NP and JC and their identifications of Mr. Whitmore as the shooter. Against that evidence, the gun evidence was a relatively minor part of the case, and that's because, as was discussed, the ballistics evidence was inconclusive. The ballistics evidence, I believe that the exact words were, I can't rule it in and I can't rule it out. In closings, the Commonwealth made the reasonable inference that because you couldn't rule it out and because there was testimony that this gun could have been used in the shooting, they made the reasonable inference that it was the murder weapon. But trial counsel for Mr. Whitmore made the exact opposite inference. And instead, he quite reasonably focused his strategy on attacking the credibility of the juvenile identification. But would it have been possible to even make that inference if Johnson's credibility were impeached, as he seems to be the only witness who would at least give some proximity of Whitmore to the firearm that was found? So if the gun is not completely out of the case, then the Commonwealth wouldn't be able to make that argument at trial. Would it be or would not be? But it's not clear how this impeachment as to bias would go so far as to knock the gun out of the case entirely. Ultimately, the jury's focus was on, the party's focus was on credibility of the witnesses, and the gun, while somewhat corroborative, isn't what turned things in either direction. And so prejudice, even if we go back and we have the hearing, and the hearing shows that he should have investigated or should have impeached, and everyone agrees for some reason that the gun would have been essentially completely excluded by this, there's no reasonable probability that the jury would have reached a different result here. I think that same analysis applies when we think about deficient performance. Does that, in saying that there's no reasonable possibility of a difference, is that because we are looking at the witnesses standing alone as sufficient for this same verdict to be returned? And are the sufficiency of evidence cases the authority to support that? No, this is not a sufficiency of the evidence analysis, but it is a IAC prejudice requires you to look at the trial as a whole, assess the relevant importance of each piece of evidence, and then figure out how the deficient performance would have impacted the evidence presented at trial. And it's simply, there is simply no way that this impeachment officer, Johnson, could have impacted the testimony from the witnesses identifying Mr. Whitmore as the shooter. Those witnesses, I mean, they're two juveniles, and one of them doesn't make a definitive ID. What do we do with the indications in the record that the gun had a prominent role in the minds of the jurors, given the questions that they asked and the arguments at the end of trial? So I would say, Your Honor, that the questions asked by the jury don't actually tell us that much about what weight they put on the gun, because the answers to those questions were, you know, the jury was asked a couple of questions about whether they could learn more about the gun, whether tests had been done on the bullets from the second victim. And the answers to those questions were no. The jury was essentially given no further information, and they nonetheless convicted, despite the fact that there's this equivocal gun evidence out there. I think the most reasonable inference is that the jury was focused on what the parties were focused on, which was the testimony of MP. I know that the record refers to him as a juvenile. I mean, he was 12 years old. Twelve-year-olds do have the ability to perceive people around them and to know who they are. I don't think that it's necessarily an additional indicia of unreliability. So let's pivot for a second, if you would. Sure. Because counsel has said that the request they're asking for here is to have an evidentiary hearing. Okay. You know, I wonder, in the Fuchs case, you mentioned the Fuchs case in your brief, as did counsel for Mr. Whitmore. But doesn't that case tell us that where you have an affidavit like this, on which there was not an evidentiary hearing at the state court, that if Whitmore can show a prima facie case, that if, in fact, the affidavit were proven to be true, that it constituted ineffective assistance of counsel? Doesn't that call for an evidentiary hearing? No, Your Honor, and I think there are a few different ways to tease that out. The first thing is there is some discussion about the affidavit being, you know, is the affidavit self-serving or is the affidavit uncontested? There's indicia in the record that suggests that the affidavit is not to be believed, such as Mr. Alva's sidebar conversation in which he says, well, I don't know anything about this, tends to show Mr. Whitmore didn't tell him, and Mr. Whitmore's colloquy when he chose not to testify in which he said, essentially, I'm happy with what my lawyer has put forward. I don't have any additional witnesses I want to call. I think the distinction I draw from the cases in which there'd be an evidentiary hearing, and I'm thinking of Branch because Branch is what the argument focus order indicated, is what we have there is a weaker case with a mixed verdict, where the record really points to this decision by trial counsel being central to what happened at trial, where the impeachment of these witnesses really could have put everything in a new light. The point that's central here is that there's no way to get to prejudice, even if we accept the affidavit is true and draw every inference down the line. There was a, you know, I believe it was Judge Phipps who mentioned the abuse of discretion standard earlier. We are, the factual record here suggests that the district court was well within its discretion to not hold a hearing in this case, given the record as a whole, given how not central the gun evidence was. But the district court's reasoning was that it could have opened the door to negative character evidence. But without an investigation, what do we know about there being negative character evidence? Or even whether there was a narcotics arrest in which Johnson participated? The statement of the prosecutor at sidebar is not evidence. The statement of the prosecutor at sidebar is not evidence, Your Honor. But that is an indication at the record that there may have been something to impeach Mr. Whitmore with. And that's further bolstered by the fact that the witnesses at trial were talking about that Mr. Whitmore was a drug dealer, that this was well known. And so I think it is quite reasonable for trial counsel to have concluded that, given the relatively minimal positive thing he could get from a searching examination of bias, to not even go down that road. It would not be helpful. It would likely be harmful because it would corroborate some of the testimony that Mr. Whitmore was a drug dealer. I think that the back and forth a few minutes ago about, well, what question could you ask? While I was preparing for this argument, I was thinking through the same thing. I'm not sure there is a question or a series of questions that Mr. Alba could have asked that would have brought out the bias and would have not opened the door for testimony explaining the source of that bias. Why doesn't he just make it duplicative if there's other evidence in the record from other witnesses about drug dealing? Your Honor, if it comes in through a police officer who's saying something like, well, I've arrested Mr. Whitmore on numerous occasions or I patrol this neighborhood and I know Mr. Whitmore is reliable, I think that is evidence of a slightly different type. It's not duplicative and would tend to be corroborative of this other evidence. Let's go back a step to the Superior Court of Pennsylvania. They have the affidavit. The PCRA court had the affidavit. The Superior Court has the affidavit. The Superior Court finds that Whitmore's claim on ineffective assistance of counsel lacked arguable merit.  Isn't that the same as them saying that the allegation on ineffective assistance of counsel was meritless? Yes, that's how I understand it. Okay. How can they come to that conclusion without anything in the record to support that? So I think that the sort of two answers to that, Judge Fischer. I think the first is, you know, if we're going to be deferring to the state court, I think the way to defer to the state court is to say the affidavit is self-serving by Mr. Whitmore, unquestionably. No question. And there is evidence in the record, specifically, as I mentioned, the sidebar for Mr. Alba and the colloquy of Mr. Whitmore that tends to undercut the reliability. What's the colloquy of Mr. Whitmore? So the colloquy is when Mr. Whitmore decides not to testify in his own defense. The trial court goes through the sort of standard questions of, you know. Well, how can you use a colloquy? Isn't that a violation of Miranda? I mean, it seems like there's a Fifth Amendment right there. You have a right to be silent, but if you can use a colloquy against him on a question like this. I mean, I'm thinking this out with you, Your Honor. I'm not sure that you're using it as substantive evidence to convict him. You're using it to cut out his. I mean, you're stretching for something to support the fact that the superior court didn't, or was correct in finding the affidavit to be meritless. So I think the second point I'd make is, obviously, you can affirm the denial of habeas relief without deferring to the state court if you find the state court to be unreasonable. For the reasons I've discussed, even if you had a hearing, Mr. Whitmore would not be able to show prejudice. And I don't think he'd be able to show deficient performance either because it's a strategy that doesn't make much sense. Going off to impeach Officer Johnson, opening the door to evidence of what Mr. Whitmore was up to in the neighborhood, while distracting the jury from Mr. Alva's most important job at trial was to try to discredit the child witnesses. And he focused on that appropriately. The record suggests that he had a reasonable strategy as to how to approach this case, and he executed it. Tell me about Fuchs. How do you read Fuchs as it applies to this case? So I would read Fuchs as being in line with Branch. I would read it as saying, you know, yes, if there's a prima facie case that's supported by the affidavit, then a hearing may be appropriate. But it's just distinguishable from the situation we have here with the affidavit. How is it distinguishable? Because it doesn't make out a prima facie case of ineffective assistance. There is not a prima facie case of ineffective assistance flowing from this affidavit that targets a minor witness who dealt with a relatively minor part of the Commonwealth case against Mr. Whitmore. But if he failed to investigate it, how could he come to a conclusion that there wouldn't be some, that there wouldn't be some something of merit to impeaching Johnson? It's hard for me to imagine what that would be, Your Honor. The implication, the argument that's been made is that what it would turn up with is the ability to impeach about that he disliked Mr. Whitmore because he had a relationship with Officer Johnson's niece. And the most, I think, I think we can agree that the most that that would do is knock out the gun from the case. And the point that we've been making is that the gun was not central to the conviction. So there's no prejudice. Can I ask you a question about what goes into this prima facie case? Right now, it seems that we're at least there's some your friend on the other side is operating with the assumption that just just claiming there was no impeachment when there was an opportunity possibly to do so makes a prima facie case. Do you think that's sufficient or do you think that in order to make a prima facie case, you would have to say there was no impeachment and anything that that impeaching would have opened the door to wouldn't have reduced my likelihood of success in the case? Because because if it would, if it would open the door, then then maybe the no impeachment isn't it isn't the prima facie case that's needed. So. So how do you define prima facie case here? I think the second approach you've outlined here is is correct. When I in preparing for this argument methodologically, I think the the approach I thought through was let's sort of draw reasonable inferences in to determine whether there's a hearing. Let's draw reasonable inferences in Mr. Whitmore's favor and then play. Think about how it would have played out in the context of the trial. And here there's no prima facie case, because even if you take what we've been talking about, in his favor and you play it out, there just isn't a way in which you successfully impeach him. You don't open the door to anything negative and you succeed in undercutting the other important pieces of evidence. So the prima facie case is not as simple as I put it in an affidavit that that says, well, he didn't impeach this witness. You have to sort of look at how that piece of evidence fits into the whole trial, which I think is generally consistent with an effective assistance jurisprudence. I mean, just just I mean, I guess my thought is so if his statement said you didn't investigate, you didn't impeach. He never arrested me. I'm not a drug dealer. I mean, we're getting really close to actual innocence at one point there, too. I mean, actual maybe of collateral crimes. But but then if he does that, then maybe we can get to the point. Oh, my goodness. All the dots do connect. And now we've got a prima facie case. But just going with the first big one might not be enough. Right. And I think you know, we're talking about reasonable inferences from the record, not every favorable inference. When you look at the record as a whole here, including, you know, I think you have to read the affidavit in the context of the sidebar, which tends to undercut the reliability. And it shows that counsel was thinking, you know, was thinking about a reasonable strategy. So I think, Judge Phipps, I think you are on the right track about how to think about a prima facie case in this in this context. If the court has no further questions, we'd ask the district court's judgment be affirmed. Thank you. Thank you. So how should we think about the relative effect of the testimony where Johnson's testimony, I think, takes up maybe 14 pages and we've got over 200 pages. When it comes to the witnesses and the neighbor. Yes, Your Honor. Immediately, Johnson's testimony was short because all he did was say that that Mr. Whitmore had this gun, but the firearm itself. And again, that connection of Mr. Whitmore to the firearm was critical. The firearm itself, almost a full day of testimony was given over to that. Almost the whole first day was given over to the recovery of this firearm, how carefully Detective Hopkins recovered the firearm. And then all of Officer Whiteman's testimony related to the ballistics. And while admittedly more of the trial was given over to other other testimony, the significance of the firearm, even though it is a more limited part of the trial, can't be dismissed because, as we saw, that's what the jury was caring about. That's what they were paying attention to the firearm evidence. That's what was most confusing to them. And so, just looking at the page numbers of what the trial was doesn't really get at the significance of what this firearm meant for this trial. And that's because, even though the juvenile testified for a very long time, he is a juvenile and he was 12 years old at the time, and the other juvenile who testified wasn't able to give a definitive identification of Mr. Whitmore at trial. So, the juvenile's testimony, though it took a long time, I admit that, was not as significant to the Commonwealth's case as this firearm evidence was. As Detective Bomberski not only says, but actually tells the jury, instructs the jury, this firearm evidence is critical to their case. And that's how the jury understood it. And I'd like to get back to, unless you have any further questions on that, Judge Krause. When you focus on Bomberski, he doesn't testify that it's critical to their case. He testifies almost about the time sequence, that it was after they recovered the firearm that they moved forward with the arrest warrant. Well, he says, Your Honor, he says that when we had the juvenile statements, he wasn't prepared to issue an arrest warrant. And it wasn't until he got the firearm evidence that he was able to issue the arrest warrant. So, you're right, chronologically, I don't know that he would have said the same thing if all they had was the firearm and they didn't have the juvenile witnesses. Clearly, both were needed. But that's the point. Clearly, both were needed. And if we were saying that the firearm, trial counsel didn't do his job in discrediting the evidence that placed this firearm in my client's hand, and Bomberski says both pieces were needed before he felt comfortable issuing an arrest warrant, then trial counsel's failures there were prejudicial to my client. Where are the record, specifically, are these references to it being placed in his hand? I'm sorry, being placed? Oh, I can give them to you, Your Honor. At different points in testimony, and I can submit a letter to the court if you would like with these citations. I'm sorry. You can do that afterwards. That's fine. I do have them here, Your Honor. I'm sorry, I lost the page. Yeah, I will submit them by letter, Your Honor. Oh, here they are. Sorry. So at JA 296, Bomberski testifies, once we were made aware that the defendant had been arrested with that weapon, that's when we submitted for the arrest warrant. At JA 310, trial counsel says, let's talk about this gun that Mr. Whitmore was arrested for. At JA 319, Commonwealth has argued he is picked up right here with the gun. And at JA 332, the court gives an instruction, you have heard evidence tending to prove that the defendant was guilty of an offense for which he is not on trial here, namely that the defendant was in possession of a gun on a date over one month after this incident. So by the end of trial, everybody was talking about Mr. Whitmore possessing this gun. And I get that we're piecing apart this testimony, and we understand that all he said was that he was within 10 to 40 feet of this gun. But that's not what the jury heard. The jury heard that he was in possession of this gun, and the jury heard that gun was the murder weapon. And for trial counsel to have not done anything to impeach the officer who put that gun in Mr. Whitmore's hand was prejudicial to this case. But again, Your Honor, we're only seeking a remand so that we can have a complete record to analyze this clean one. Okay. Thank both counsel for a very helpful briefing and argument. And we will take the case under advisement. Thank you.